IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| T.W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | NO. |
| SAS HOTELS, LLC, ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

COMES NOW Plaintiff in the above-styled action and hereby files her Complaint as follows:

1.

This case arises out of the minor sex trafficking of Plaintiff T.W. at Defendants' hotels. Given the nature of the case, and her status as a minor at the time of the events at issue, T.W. is identified in this Complaint only by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed T.W.'s full name to defense counsel or will immediately upon

identification of counsel.  Upon information and belief, all parties consent to proceeding by using T.W.'s initials.[1]

## PARTIES, JURISDICTION, AND VENUE

2.

T.W. is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court.

3.

At all times relevant to this complaint, Defendant SAS Hotels, LLC ("SAS") owned, managed, supervised, operated, oversaw, controlled the operation of, and was inextricably connected to the renting of rooms at the Econo Lodge located at 4874 Old National Hwy, College Park, Fulton County, Georgia 30337 ("Econo Lodge"), from which it benefited financially.[2]

4.

SAS was a Georgia limited liability company with its principal place of business at 59 Cobblestone Drive, Newnan, Georgia. Pursuant to O.C.G.A. § 14-4-

---

[1] Contemporaneously with this Complaint, Plaintiff filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include minor sex trafficking, are intimate and personal in nature, as well as for T.W.'s own personal safety.

[2] The Econo Lodge where Plaintiff was trafficked is currently the "Rashelle Hotel Atlanta". However, during the time of her trafficking, the hotel was an Econo Lodge, a brand of Choice Hotels.

161(b), service can be made on SAS by serving its registered agent at the time that it was dissolved: Mohammed Awal, 39 Stonebridge Pass, Newnan, Georgia 30265.

5.

Jurisdiction and venue are proper as to SAS, and SAS was properly served with process in this action.

6.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. 1595(a).

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Fulton County, Georgia, within the Northern District of Georgia, Atlanta Division.

## SEX TRAFFICKING ALLEGATIONS

8.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. 18 U.S.C. § 1591(a), *et seq*. It also includes financially benefitting from participation in a venture that engages in those

violations. *Id.* Plaintiff was a victim of minor sex trafficking at Defendant's hotel at all times relevant to this Complaint.

9.

Defendant knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

10.

Defendant knew or should have known that Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at Defendant's hotel. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.

11.

Defendant, for a fee, provided a market for the sale of children, a private and anonymous venue for the minor T.W. to be sold for sex at its hotel.

12.

Hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

13.

Plaintiff was trafficked for sex at the Econo Lodge, where she was an invitee, from December of 2013 to January of 2014. Plaintiff stayed at the Econo Lodge, where she was sold for sex, for approximately 2 weeks.

14.

While she was trafficked at the Econo Lodge, Plaintiff exhibited numerous well-known and visible signs of a minor sex trafficking victim in the common areas, of which Defendant knew or should have known, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and monitoring and control by her trafficker, an older man.

15.

While she was trafficked at the Econo Lodge, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendant knew or should have known.

16.

While Plaintiff was trafficked at the Econo Lodge, many older men visited her sex trafficker's room each day, each for short periods of time.  Defendant knew or should have known that the number of daily, older male visitors to the room was obviously indicative of minor sex trafficking, and Defendant negligently failed to control or monitor the frequent male visitors.

17.

While Plaintiff was trafficked at the Econo Lodge, several other victims were also trafficked for sex at the hotel, which has been described as "an open market for sex."  As a result, a large number of buyers frequented the hotel each day.

18.

Plaintiff and other trafficking victims, some even younger than T.W., frequently appeared throughout the hotel and on the hotel premises and approaches wearing very little clothing, and solicited dates for sex in the hotel parking lot.

19.

Defendant knew or should have known of the frequent presence of "lot lizards", the well-known nickname for men who loitered in the Econo Lodge parking lot to meet and have sex with minor victims of sex trafficking who were forced to openly solicit men in the Econo Lodge parking lot, including Plaintiff.

20.

Plaintiff interacted with the hotel staff and managers at the Econo Lodge, who knew or should have known Plaintiff was a minor victim of sex trafficking occurring at the hotels.

21.

Plaintiff's trafficker frequently visited the front desk of the Econo Lodge and interacted with hotel employees while buyers were in the room having sex with Plaintiff.

22.

Employees at the Econo Lodge accommodated and were familiar with Plaintiff's trafficker, due to him having stayed at the Econo Lodge while trafficking other minor victims there in the months preceding the sex trafficking of Plaintiff.

23.

Employees at the Econo Lodge visited the room used for Plaintiff's sex trafficking.

24.

The Econo Lodge and its approaches were well known for crime, prostitution, and minor sex trafficking.

25.

Defendant knew or should have known of other minor sex trafficking, sex crimes, and other crimes at the hotels and in their immediate vicinity before Plaintiff was trafficked for sex at the Econo Lodge. Defendant knew or should have known of violent crimes occurring on its premises and approaches, yet negligently did nothing.

26.

Defendant had actual or constructive knowledge of publicly available online reviews of the Econo Lodge reporting widespread prostitution and crime occurring at the hotel, yet negligently did nothing.

27.

Defendant knew or should have known of the following Econo Lodge reviews:

a) A November 2012 review stating: "We walked outside to go and get dinner and there were HOOKERS all over the parking lot hanging off the balcony of the upstairs rooms and trying to get whatever man walked in their path!!!! This is obviously a hotel where the prostitutes do ALL THEIR BUSSINES!!! I will NEVER EVER STAY THERE AGAIN!!! EVER!! . . . I will pay more $ next time for NO HOOKERS!!!! NEVER AGAIN!!! WILL WE STAY THERE, HOOKERS HOOKERS HOOKERS YUCK HOOKERS ALL OVER THE PLACE!!!"

b) A June 2013 review stating: "Only stay at this awful place if you want to see HOOKERS and drug addicts all over the place. . . . I can't believe this hotel is even allowed to stay open. Very scary!!!!"

c) A September 2013 review stating: "when I pulled into the location, I instantly saw drug users, prostitutes and drug dealers roaming the property. . . . All of the doors face outside so I could see everybody from the users, prostitutes and alcoholics just lounging about because they all had their doors open."

d) A May 2014 review stating: "A guest in the parking lot made a comment to my friend 'hey you are pretty do you want to make some money' hahaha i wasn't there to verify but that's what she said. But this hotel is

9

just a no-no unless you have a brave heart and some street cred!!"

e) A 2014 review stating: "There is no question that this place is known for prostitution. Ladies of the night were standing outside the doors as we passed. One 'client' yelled out to us, 'If I were you, I'd be scared too.' . . . I put my phone on my chest, hugged my daughter, and listened as 'business' went on in the room to the sides and above us. Business was very good that particular evening and did not end until 5am. . . . It was somewhere between a halfway house and a prison, but at least in a prison there would be better security!"

f) A 2015 review stating: "Prostitute kingdom if that's what you like if you not use to this kinda atmosphere then keep it moving str8 hood if you not used 2 don't stop."

g) A 2016 review stating: "This place is a trap!! Prositutes...dope boys and drug dealers. I was even solicited on the way to the ice machine."

28.

As a direct and proximate result of Defendant's acts and omissions, T.W. suffered substantial physical, emotional, and psychological harm and other damages.

## DEFENDANT'S ROLE

29.

At all times relevant hereto, SAS owned, operated, maintained, controlled, and managed the Econo Lodge.

30.

SAS is directly and vicariously liable for the acts and omissions of its agents and employees as discussed herein.

31.

Whenever reference is made in this complaint to any act, deed, or conduct of a Defendant, the allegation is that the Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

## COUNT I
## STATUTORY LIABILITY: SEX TRAFFICKING
## AT THE ECONO LODGE
## 18 U.S.C. § 1595

32.

Plaintiff incorporates Paragraphs 1 through 31 as if fully restated herein verbatim.

33.

Defendant SAS knew or should have known of the steps to take to prevent the Travelodge from being used as a venue for Plaintiff's minor sex trafficking, and knew or should have known about the Department of Homeland Security ("DHS") guidelines to identify warning signs that indicate the presence of sex trafficking on the hotel premises such as:

a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b) persons who lack freedom of movement or are constantly monitored;

c) persons who have no control over or possession of money or ID;

d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g) extended stay with few or no personal possessions in the room;

h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i)   the same person reserves multiple rooms;

j)   a room is rented hourly, less than a day, or for an atypical extended stay;

k)   attempts to sell items to or beg from patrons or staff;

l)   cars in the parking lot regularly parked backward, so the license plates are not visible;

m)   loitering and solicitation of male patrons;

n)   waiting at a table or bar and picked up by a male (trafficker or customer);

o)   persons asking staff or patrons for food or money; and

p)   persons taking cash or receipts left on tables.

34.

In violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), Defendant SAS knowingly benefitted from participation in a venture at the Econo Lodge that Defendant SAS knew or should have known engaged in acts in violation of the TVPRA.

35.

Defendant SAS knowingly benefitted from Plaintiff's minor sex trafficking by receiving a revenue generated by the operation of the Econo Lodge, including

the revenue generated for the rooms in which T.W., a minor, was trafficked.

36.

Defendant SAS participated in a hotel venture and knew or should have known that the hotel venture violated the TVPRA. Defendant SAS further engaged in a sex trafficking venture by and through the acts and omissions of its employees and managers, and in providing to Plaintiff's trafficker the necessary venue for Plaintiff's minor sex trafficking.

37.

The venture in which Defendant SAS participated was in or affecting interstate commerce.

38.

Defendant SAS knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant SAS, its agents, employees, and representatives, knew that Plaintiff, a minor, was being sold for sex at the Econo Lodge and knew it was renting rooms her to trafficker for the purposes of trafficking her, but did nothing.

39.

Defendant SAS knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant SAS, its agents, employees, and

representatives knew or should have known of other sex trafficking, including minor sex trafficking, and sex crimes at the hotel before and while Plaintiff was trafficked for sex at the Econo Lodge.

40.

Defendant SAS is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its employees, agents, and representatives.

41.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant SAS's participation in this minor sex trafficking venture.

42.

Defendant SAS is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

**DAMAGES**

43.

Plaintiff incorporates Paragraphs 1 through 42 as if fully restated herein verbatim.

44.

As a proximate and foreseeable result of the Defendant's negligence and violations of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia and federal law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

    a)    Personal injuries;

    b)    Past, present and future conscious pain and suffering;

    c)    Loss of enjoyment of life;

    d)    Medical expenses;

    e)    Mental anguish and emotional distress;

    f)    Loss of past, present, and future wages;

    g)    Incidental expenses;

    h)    All special, compensatory, economic, punitive, and other damages permissible under Georgia law and Federal law; and

    i)    Consequential damages to be proven at trial.

45.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendant and its employees were willful or wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

46.

Defendant's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68(e) and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Federal and Georgia statutory and common laws.

    WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendant for the following:

    a)    Process issue as provided by law;

b)   Plaintiff be awarded actual damages in amounts to be shown at trial from the Defendant;

c)   Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

d)   Plaintiff be awarded a trial by jury; and

e)   Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 27th day of March, 2025.

                                                Respectfully submitted,

                                                **LAW & MORAN**

                                                /s/ Denise D. Hoying
                                                Peter A. Law
                                                Georgia Bar No. 439655
                                                pete@lawmoran.com
                                                E. Michael Moran
                                                Georgia Bar No. 521602
                                                mike@lawmoran.com
                                                Denise D. Hoying
                                                Georgia Bar No. 236494
                                                denise@lawmoran.com
                                                Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

                              **ANDERSEN, TATE & CARR, P.C.**

                              /s/ Patrick J. McDonough
                              Patrick J. McDonough
                              Georgia Bar No. 489855
                              pmcdonough@atclawfirm.com
                              Jonathan S. Tonge
                              Georgia Bar No. 303999
                              jtonge@atclawfirm.com
                              Attorneys for Plaintiff

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing *Complaint for Damages* has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

        Respectfully submitted,

        **LAW & MORAN**

        /s/ Denise D. Hoying
        Peter A. Law
        Georgia Bar No. 439655
        pete@lawmoran.com
        E. Michael Moran
        Georgia Bar No. 521602
        mike@lawmoran.com
        Denise D. Hoying
        Georgia Bar No. 236494
        denise@lawmoran.com
        Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710